*Jones, Parks & Johnston,* contra.

---

## ELBERTON SOUTHERN RAILWAY COMPANY *v.* CANON OIL AND FERTILIZER COMPANY.

1. The deed under which the defendant sought to show title by prescription under color was insufficient to afford a basis of prescription; and therefore the court erred in charging the jury in regard to that principle of law. The evidence for the defendant was insufficient to show title by adverse possession for a term of twenty years; and therefore the court erred in refusing to grant a new trial.

2. The remaining ground of the motion for a new trial complains that the court erred in ruling out of the evidence a blueprint map of the premises offered by the plaintiff. The evidence of the witness relied on to show the correctness of this map is not incorporated in this ground of the motion; and hence no question is presented for decision.

No. 3177. November 15, 1922.

Complaint for land. Before Judge Hodges. Franklin superior court. March 11, 1922.

Elberton Southern Railway Company brought complaint against Canon Oil and Fertilizer· Company, for the recovery of described parcels of land located in Franklin County. The plaintiff claimed title under the following deeds: Deeds from Job Bowers to Elberton Air-Line Railroad Co., dated Dec. 10, 1874, conveying " all the land contained within one hundred feet in width on each side of the track or roadway, measuring from the center, of any portion of the lot of land hereinafter described through which said railroad may be constructed, run, and operated; the land hereby conveyed being out of and a portion of land known as the Hall place, containing two hundred and thirty acres more or less in one tract, and one hundred acres more or less in the other; the above lands adjoining lands of L. Peoples, John Bowers, and others. To have and to hold said tract. or parcel of land unto said Elberton Air-Line Railway Company, for railroad purposes, forever in fee simple." Deed from S. P. Bond to Elberton Air-Line Railway Co., dated Aug. 8, 1878, conveying " all the land contained within one hundred feet in width on each side of the track or roadway, measuring from the center, of any portion of the lot of land hereinafter described through which said road may be constructed and operated; the land hereby conveyed being cut off and a portion of land containing seventy acres more or less, and granted to Job Bowers, adjoining H. F. Bowers and W. J. Fowler and others. To have and to hold said tract of land unto said Elberton Air-Line Railway Company, for railroad purposes, forever in fee simple." Deed from a special commissioner appointed by the United States Circuit Court to Harry V. Poor, conveying the railway constructed by Elberton Air-Line Railroad Co., including " all right of way; " and a deed from Poor to Elberton Southern Railway Co., conveying the same property.

The defendant, answering, admitted that it was in possession of the property described in the petition, and claimed the property under a deed from S. P. Bond, dated July 31, 1902, which described the property as follows: " Beginning at a stake on R. R. track near the terminus of First Avenue, thence N. 88 W. 1 1/4 chs. to stake on S. W. side of said Ave., and east corner of Uni-

versalist Church lot, thence S. 44 W. 4 1/6 chains to stake in center of Broad St., thence S. 46 E. 7 chains to stake, thence N. 44 E. 3 7/8 chains to R. R. track, thence with R. R. track to beginning corner, containing three & 18/100 acres including R. R. right of way, which I only claim citizens domain." In its answer it also pleaded that it had for more than twenty years been in the public, exclusive, uninterrupted, and peaceable possession of the premises, and for more than seven years under written evidence of title. In the brief of defendant in error it is stated that defendant " denies the plaintiff's right to a right of way of two hundred feet, but does not contend against a right of way of one hundred feet in width."

The deed from Bond to Elberton Air-Line Railroad Co. (predecessor of the plaintiff) was dated August 8, 1878, and recorded June 18, 1879. The deed from Bond to the defendant was dated July 31, 1902, and recorded May, 1914. The deed from Bowers to Elberton Air-Line Railroad was dated Dec. 10, 1874, and recorded August 20, 1878. The plaintiff's evidence in addition to the above-mentioned deeds also included oral evidence tending to show prescription entitling it to a strip of land extending one hundred feet each way from the center of its track, making a total width of two hundred feet. The evidence of the defendant in regard to prescription was as follows: One witness testified: " In 1875 S. P. Bond [under whom the defendant claims] had possession of the land in dispute, the oil-mill property; that was after the railroad was built. The possession was evidenced by cultivation and ownership; he had a pasture there at the time; he cultivated a portion of the land that is now in controversy, and some was under fence after the railroad had been constructed. He deeded this to the Oil Mill, and they have had possession since and they are in possession now; they have been in possession since 1875 by the Oil Mill and S. P. Bond; that possession was open and notorious, and anybody could see it. The Oil Mill was built in 1902. Before the Oil Mill was built this land was in the possession of S. P. Bond. . . In regard to just knowing when I bought from Bond that it had been used as a pasture, the pasture had been done away with for several years and was being cultivated; he was renting the place at the time to a darkey. It is true that the railroad allows people to cultivate land up to the railroad,

but they don't allow any one to go within fifty feet of the center of the track. I have had some experience. It is a common thing to see all along the road people cultivating up to the railroad. I have had some experience with them about keeping me off. I was building right there close to the Old Mill, and I instructed my hands not to go within fifty feet of the center of the track; they carelessly got a little over the fifty feet, and the section-boss was there the next day with his tape measuring, and he moved it fifty feet from the center of the track. . . He moved the building back, and marked off fifty feet from the center of the track, and allowed the building to go on. In regard to knowing at the time that the Southern Railway claimed it, I knew they claimed fifty feet. I suppose they had fifty feet on each side of the track; they claimed fifty feet at the time, that is 100 feet in width. I didn't see the deed except the deed on record; it says 100 feet in width, measuring from the center of the track each way, and that the track should be in the center of the 100 feet." Another witness testified: "I have known this property now occupied by the Canon Oil Mill thirty years. It has been in the possession of Mr. Bond and the Canon Oil Mill. Bond occupied it by having it in his possession and using it as a pasture."

Trial of the case resulted in a verdict finding for defendant the premises in dispute. Exception is taken to the overruling of a motion for a new trial.

*Adams & Johnson, W. R. Little,* and *George C. Grogan,* for plaintiff.

*Claude Bond, H. W. Whitnell,* and *D. T. Barnes,* for defendant.

GILBERT, J. 1. Error is assigned on the following excerpts from the charge of the court: (*a*) " If you believe from the evidence that the defendant company and those through whom it claims title has had public, exclusive, uninterrupted, and peaceable possession of the premises in dispute, accompanied by a claim of right, for a period of seven years or without color of title, the plaintiff could not recover, as such possession would give the defendant company good title to said premises." (*b*) " Whether or not the defendant has sustained its plea of seven years possession under color of title is a question of fact for you to determine from all the testimony in the case; whether or not there is anything in defendant's deed or paper title that it holds to put

it on notice of any rights of the plaintiff is a question of fact for you to determine from all the facts in the case." These two assignments of error may be considered together. The criticism upon these charges is, that they were not authorized by the evidence; that there was no deed or other instrument of writing which would constitute color of title to the land in dispute; that the court left it to the jury to construe the deed. The defendant based its claim to a color of title upon a deed introduced in evidence executed by S. P. Bond in 1902, who also executed a deed in 1878, recorded in 1879, to Elberton Air-Line Railroad Co., a predecessor of the plaintiff, and under which the latter claims. The description in the defendant's deed is as follows: " Beginning at a stake on R. R. track near the terminus of First Avenue, thence N. 88 W. 1 1/4 chs. to stake on S. W. side of said Ave., and east corner of Universalist Church lot, thence S. 44 W. 4 1/6 chains to stake in center of Broad St., thence S. 46 E. 7 chains to stake, thence N. 44 E. 3 7/8 chains to R. R. track, thence with R. R. track to beginning corner, containing three & 18/100 acres including R. R. right of way, which I only claim citizens domain." It will be noted that the description includes a strip of land bounded on one side by a line running along the center of the railroad-track, and, after giving the metes and bounds, the description contains these words: "containing 3 18/100 acres, including R. R. right of way, which I only claim citizens domain." In the argument of the case in this court attention was called to the phrase "citizens domain." None of the law dictionaries, nor Words & Phrases, nor any other authority on the meaning of words and phrases contains any reference to "citizens domain." It may be assumed from this that the phrase has no established legal meaning. We do not think it necessary to define or to impute a meaning to these words, in order to arrive at a correct decision as to the issue here involved. What the grantor probably meant by the phrase "citizens domain" was that he only had such right over the railroad right of way as was common to all citizens. Thus construed the deed was insufficient to constitute color of title as against the railroad company to any part of the right of way. Certainly the grantor in this deed disclaims any personal or individual right or title to that portion of the land contained in the description which constituted a part of the right of way of the

railroad. He clearly disclaimed any intention to convey to the grantee the railroad right of way, and the phrase was sufficient to put the vendee on notice that it was not obtaining any title to the railroad right of way, and it became its duty to ascertain the location and extent of the same.

The above-quoted phrase contained in the deed, for another reason, was amply sufficient to put the grantee upon notice that the grantor did not intend to convey absolutely all of the land contained within the metes and bounds as described, but only intended to convey it subject to the rights of the railroad company already acquired. The initial point in the description is on the railroad-track itself, as the description says, " beginning at a stake on R. R. track." Obviously any grantee, from this language, must have known that the grantor could not convey to him any land on that railroad-track. Likewise the third corner described in the metes and bounds is the railroad-track, and the line runs thence along the railroad-track to the beginning point. The defendant's only written evidence of title was this deed, and it is bound by the recitals therein. Moreover the grantee admitted on the trial of the case, and it is admitted in the brief of his counsel filed in this court, that the plaintiff owned fifty feet on each side of the railroad-track, and that the railroad had been constructed and was in operation at the time the defendant obtained the deed under which it claimed, and that the railroad had been in continuous operation from that time until the day of the trial. These are facts showing that the defendant was on notice of the rights of the railroad company. The charter of the Elberton Air-Line Railroad Co., predecessor of the plaintiff, granted by the General Assembly in an act approved December 13, 1871, provides that the railroad company and its successors shall have the power to purchase and to receive as donations and hold in fee simple any lands necessary for the site on and along which to locate, run, and establish said railroad, including its right of way. The deeds under which the plaintiff claims convey the lands " for railroad purposes, forever in fee simple." On the trial an officer of the defendant company swore as follows: " In regard to knowing at the time that the Southern Railway claimed it, I knew they claimed fifty feet. I suppose they had fifty feet on each side of the track; they claimed fifty feet at the time, that is 100 feet in width. I didn't see the deed except the deed on record; it says 100

feet in width, measuring from the center of the track each way, and that the track should be in the center of the 100 feet." The last expression in this quoted testimony, to wit, " that the track should be in the center of the 100 feet," is obviously contrary to the plain and unambiguous terms of the deed with which the witness admitted he was familiar. The deed conveys " all the land contained within one hundred feet in width on each side of the track or roadway, measuring from the center." It was error, therefore, for the court to give in charge the principles applicable to prescription under color of title. The evidence for the defendant tended to show that the common grantor occupied a portion of the right of way granted to the railroad company, after such grant, up to a line fifty feet from the center of the track and running parallel therewith; but it also showed that the railroad company permitted the public generally to so occupy that portion of the right of way. Such possession would be permissive only, and of course, not being adverse, would not constitute a basis for prescriptive title. The defendant purchased from the common grantor in 1902; and while the permanent buildings erected by it might be considered by the jury to constitute an intention to hold the land occupied by the building permanently and adversely to the railroad, these buildings, at the time the suit was filed in 1916, had not been constructed for a term of twenty years, and therefore such possession would not be sufficient for the ripening of prescriptive title by adverse possession for a period of twenty years. In *Green* v. *South Bound Railroad Co.,* 112 *Ga.* 849 (38 S. E. 81), it was said: " Where a railroad company entered into actual possession of land, constructing and putting in operation its line of road thereon, whether with or without the owner's consent, a subsequent purchaser of the land takes it subject to the burden of the railroad, and has no right of action against the company for the value of the land so appropriated." This ruling is applicable in principle. See also *Central Ry. Co.* v. *Standard Fuel Co.,* 144 *Ga.* 92 (86 S. E. 228).

The evidence for the defendant was insufficient to show title by adverse possession for a term of twenty years, or for seven years under color of title; and therefore the court erred in refusing to grant a new trial.

2. No elaboration of the second headnote is required.

*Judgment reversed. All the Justices concur.*